STATE OF CONNECTICUT *v.* WILLIE JOHNSON
(8024)

SPALLONE, O'CONNELL and FOTI, Js.

Argued February 2—decision released July 31, 1990

*Jeremiah Donovan,* special public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Patrick J. Clifford,* assistant state's attorney, for the appellee (state).

FOTI, J. After a jury trial, the defendant was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) and unlawful restraint in the first degree in violation of General Statutes § 53a-95. In his appeal, the defendant claims that the trial court (1) should have suppressed identifications of the defendant, (2) should have charged on general intent to commit sexual assault in the first degree, and (3) should have ordered a second competency examination. We affirm the trial court's judgment.

The jury could have found the following facts from the evidence adduced at trial. At approximately 3 a.m. on June 6, 1987, the victim left her residence at the Pond Lilly Motel in New Haven, crossed Whalley Avenue, and purchased cigarettes at a twenty-four hour gasoline station. As she crossed the street again to return to the motel, she saw the defendant parked in front of the motel in a white Chevrolet. She recognized him, but could not remember his name. She approached the car and asked the defendant for a ride to the Brookside housing project. She wanted to visit her sister there and pick up money for milk and diapers. As the victim entered the white Chevrolet she noticed that it was a four door vehicle, with a plastic window on the driver's side and bucket seats.

En route to the housing project, the defendant pulled off the road into a secluded driveway, turned off the car lights and ignition. He told the victim to take his penis out of his pants. She refused and, as a ploy, suggested that they return to the motel where she knew her friends would help her fend him off. The defendant then opened his fly, took out his penis and demanded that the victim perform fellatio. When she refused, he threatened that he would pick up something and hit her if she did not cooperate. The victim complied with his commands for a short time and then attempted to leave the car. The defendant grabbed her, ripped her coat, prevented her from leaving the car, and ordered her to continue. The victim then performed fellatio until the defendant ejaculated.

The defendant then drove a short distance and ordered the victim out of the car. She complied and wrote down the car's license plate number as the defendant drove away. She then walked to Whalley Avenue where she was picked up by a friend who was driving a cab. After she related the events to the cabdriver, he radioed his dispatcher. The dispatcher, in

turn, called the New Haven police and arranged for the driver to bring the victim to the parking lot of Chucky's, a twenty-four hour food store, to meet with the police. Within a short time, Detectives Leonard Pastore and Everett Nichols arrived at Chucky's in an unmarked car and Officer Joseph Streeto arrived in a patrol car. The victim was very distraught, but was able to give the officers the license plate number and a description of the white Chevrolet, and a physical description of her assailant including the fact that he was wearing jeans, a tan shirt and a maroon baseball cap when he assaulted her.

Streeto checked the license plate number the victim had given him and found that it was registered to Toya Cummings of West Ivy Street, New Haven. He drove to West Ivy Street in the police car and located a white Chevrolet with a plastic window on the driver's side and bearing the license number given to him by the victim.

Pastore and Nichols took the victim to the scene of the crime. They then joined Streeto on West Ivy Street where the victim identified the white Chevrolet as the car in which she was assaulted. She remained in the unmarked police car with Nichols while Streeto and Pastore located Toya Cummings at 284 West Ivy Street.

Cummings opened her door to the police and confirmed that she owned the car in question. The defendant, who had been in the shower, came to the door clad only in a towel. The officers informed Cummings and the defendant that the car had been used within the last hour by the perpetrator of a sexual assault. The defendant admitted that he had used the car until about 6 p.m. the night before. When Streeto and Pastore asked the defendant to step outside the house, he put jeans on and voluntarily complied with their request.

He willingly followed the officers to within twenty feet of the unmarked police car that held the victim. The victim identified him as her assailant and he was placed under arrest.

With Cummings' consent, the police then searched the house at 284 West Ivy Street and seized a shirt and a maroon hat. These items were later identified by the victim as those worn by her assailant.

I

The defendant first claims that the trial court should have granted his motion to suppress the victim's on the street and in-court identifications. He asserts that the show-up was impermissibly suggestive, that the court did not conduct a suppression hearing outside the presence of the jury, that the in-court identification was compromised by the suggestiveness of the prior identification, and that the identifications should have been suppressed as the tainted fruit of an illegal arrest.

The record discloses that the defendant filed three motions to suppress on June 29, 1987, addressed to statements, items and identification. The record further discloses that on July 6, 1987, the court, *Ronan, J.,* deferred these motions to the time of trial pursuant to Practice Book § 813.[1] At trial, the defendant neither claimed his motion to suppress the identifications nor objected to the state's admission of the out-of-court identification into evidence. Although this claim was not raised at trial, we will review the defendant's claim under the bypass doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); see also *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989).

_____

[1] Practice Book § 813 provides in pertinent part: "A motion made before trial shall be determined prior to trial, unless the judicial authority orders that the ruling be deferred until during the trial of the general issue or until after the verdict. Unless the judicial authority otherwise permits, all pretrial motions pending at the time for the hearing of any pretrial motion shall be heard at the same time."

Our Supreme Court has stated that it "has adopted a two-pronged inquiry in determining whether identification procedures have violated a defendant's due process rights. First, we address whether the identification procedure was unnecessarily suggestive. If so, the second question becomes whether the identification was nevertheless reliable based on the 'totality of the circumstances.' " State v. Mitchell, 204 Conn. 187, 201, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).

## A

### ON THE STREET SHOW-UP

An identification based on a one-on-one confrontation between a victim and a suspect who is presented by the police has been found to be "inherently and significantly suggestive; State v. Middleton, 170 Conn. 601, 608, 368 A.2d 66 (1976); because it conveys the message that the police have reason to believe the suspect [is] guilty. State v. Willin, 177 Conn. 248, 251, 413 A.2d 829 (1979)." State v. Maturo, 188 Conn. 591, 595–96, 452 A.2d 642 (1982). Applying this standard to the present case leads us to conclude that the identification procedure employed in this case was presumptively suggestive. Our inquiry does not end here, however. "Upon finding suggestive circumstances, court's have then asked whether such circumstances were impermissible or unnecessary." State v. Mitchell, supra. Prompt on the scene confrontations, under some circumstances, ensure accurate identification. In addition, promptness may aid reliability and allow for the quick release of an innocent person when no positive identification is made. This permits the police quickly to resume their investigation with only a minimum of delay. State v. Barnes, 16 Conn. App. 333, 344, 547 A.2d 584 (1988); State v. DeJesus, 7 Conn. App. 309, 315–16, 508 A.2d 463 (1986).

The roadside identification in this case occurred within one hour of the sexual assault. Although the defendant matched the description of the assailant and admitted that he had driven the car earlier that night, the police could not have been certain he was the perpetrator without arranging the show-up. It was important for the police to determine quickly whether the defendant was the assailant, or whether they should continue their investigation. Under these circumstances, we cannot conclude that the show-up was *impermissibly* or *unnecessarily* suggestive. See *State v. Hamele*, 188 Conn. 372, 377–78, 449 A.2d 1020 (1982).

Even if we were to find that the show-up was impermissibly suggestive, the challenged identification was nonetheless admissible under the second prong of the test set out in *State* v. *Mitchell*, supra, i.e., the reliability of the identification. The factors to be considered for this second prong of our inquiry include the opportunity of the victim to view the perpetrator at the time of the crime, her degree of attention, the accuracy of her prior description of him, the level of certainty she showed at the one-on-one confrontation, and the time that elapsed between the crime and the confrontation. Id., 202; *State* v. *Hamele*, supra, 378.

The victim in the present case had ample opportunity to view the defendant. She was the focus of the crime. She recognized the defendant as a former acquaintance. Because of the nature of the crime, she had an ample opportunity to observe the defendant, and, consequently, she was able to give an accurate description of both his physical appearance and the car he drove. In addition, she was not hesitant in her identification and the time between the incident and the identification was less than one hour.

Viewing the totality of circumstances in this case, we conclude that the trial court properly allowed the identification testimony to come before the jury.

The defendant also contends that the show-up or one-on-one confrontation should have been suppressed as the fruit of an unlawful arrest. Because the defendant has provided us with an inadequate record to establish that the arrest was unlawful, we decline to review this claim. *State* v. *Anderson,* 209 Conn. 622, 633, 533 A.2d 589 (1989).

## B

### IN-COURT IDENTIFICATION

The defendant further contends that the victim's in-court identification of the defendant was impermissibly suggestive for two reasons. First, he asserts that the in-court identification was fatally compromised by the victim's participation in an unnecessarily suggestive show-up. In light of our holding above that the out-of-court identification was neither impermissibly suggestive nor unreliable, we must now conclude that the in-court identification did not deprive the defendant of his due process rights. *State* v. *Piskorski,* 177 Conn. 677, 745, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

The defendant next asserts that the in-court identification was impermissibly suggestive because he was the only black male in the courtroom at the time. The record before us does not reflect this fact. Therefore, we decline to review this claim. *State* v. *Anderson,* supra, 634.

## II

The defendant claims that the court should have instructed the jury on the requisite intent of the crime of sexual assault in the first degree. Although he

acknowledged that sexual assault in the first degree is a general intent crime; see *State* v. *Rothenberg,* 195 Conn. 253, 258 n.4, 487 A.2d 545 (1985); he contends that the court should have instructed on general intent after explaining the elements of the crime charged.[2] He asserts that the jury could have found that he did the acts he was accused of by accident, mistake, or some other innocent reason.

As the defendant agreed during oral argument before this court, the controlling case on this question is *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986). In *Pierson,* our Supreme Court held that no special instructions as to intent are required for a general intent crime *unless* something in the evidence presented indicates that the defendant acted involuntarily, without sufficient mental capacity, under duress or while entrapped. *State* v. *Pierson,* supra, 218.

The defendant argues that the jury should have been instructed that it was necessary to find that he acted voluntarily. He asserts that the victim's testimony[3] indicated only that she feared he might hit her if she did not comply with his demands. He further contends that this testimony was ambiguous and could have led the

[2] Although the defendant did not properly preserve this claim for appeal, we will review it under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); because the claim involves an essential element of the crime on which the failure to instruct may result in a due process violation. *State* v. *Pollitt,* 205 Conn. 132, 150, 531 A.2d 125 (1987).

[3] When asked how she replied to the defendant's demands that she perform fellatio, the victim responded: "I said No, and he said I better do it or he is going to do something to me." She was then asked what *he said* he was going to do to her, and she responded: "He was going to hit me with whatever he had in the car. He was going to pick up something and hurt me with it." Since the response was as to what the defendant had said, her answer did not represent her interpretation of his intentions, but rather a statement actually made by the defendant.

jury to believe that she was not compelled by force to perform fellatio, but rather did so voluntarily. We do not agree.

The evidence presented at trial showed that the victim said "No" twice, that she was threatened with force if she did not comply, that force was actually used on her when she attempted to leave the car, and that the defendant prevented her flight by grabbing and ripping her coat. No evidence was presented at trial to show that the defendant's conduct was involuntary. Thus, there was no need for the trial court to instruct the jury that the defendant's actions may have been involuntary.

### III

The defendant's final claim is that the court should have granted his motion for a further competency examination.

Certain additional facts are relevant to the resolution of this claim. On August 15, 1988, during the course of jury selection, a request was made by defense counsel for a competency examination pursuant to General Statutes § 54-56d.[4] It was represented that the defendant was periodically unable to remain calm and

---

[4] General Statutes § 54-56d provides in pertinent part: "(a) COMPETENCY REQUIRED. DEFINITION. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

"(b) PRESUMPTION OF COMPETENCY. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by clear and convincing evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) REQUEST FOR EXAMINATION. If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency."

assist in his defense for several hours at a time, that he made irrational statements, such as demanding to be put in the electric chair, that he expressed an intention to call 5000 character witnesses to testify, and that he was in need of medication and hospitalization. The trial court granted the motion. The examination report concluded that the defendant understood the nature of the charges against him and was capable of aiding in his defense. The report indicated that despite a relationship of conflict with his current lawyer the defendant had worked cooperatively in the past with counsel and retained the capacity to assist in his defense. The report added that the defendant's loss of control and threatened violent behavior could be attributed to his active cocaine abuse, and that he could be cooperative and cogent in a drug free environment. In addition, the report noted that his girl friend had commented that he had a "bad temper with or without cocaine . . . ."

On October 6, 1988, defense counsel waived a competency hearing stating that she had read the report and agreed that the defendant was presently competent to stand trial. The defendant added that he had always been competent. The court found the defendant competent to stand trial.

On October 7, 1988, defense counsel informed the court that the defendant wanted a different lawyer. Following a continuance to allow counsel to consult with the defendant, the defendant refused to return to the courtroom. It was reported by the sheriff that the defendant had been belligerent and loud but had issued no threats, and was now calm. Finally, the defendant indicated that he had decided not to replace his attorney for the moment.

On October 13, 1988, during a bond reduction hearing, the defendant informed the court that he could no longer communicate with his lawyer because of the bit-

terness that had arisen between them. After jury selection resumed, the defendant, speaking through counsel, informed the court that he felt ill and could not continue for the day because of an adverse reaction to an antidepressant drug, Desyrel, which he had received from the department of correction to calm his nervousness. The trial court observed the defendant reading documents and consulting with his attorney, and so concluded that he had the ability to concentrate. The court added that correction department officials should be contacted to ensure that the defendant was receiving the correct dosage of the antidepressant drug.

When trial resumed the following day, defense counsel moved for a second competency examination asserting that the defendant was currently incapable of assisting at trial. The trial court pointed out that the competency examination, conducted nine days earlier, did not indicate that the defendant was beset by any deep-seated psychological problems. On the basis of its reading of the competency examination report and its observation of the defendant reading police reports and conferring with his lawyer during voir dire, the court concluded that the defendant was a highly intelligent and articulate individual who was capable of understanding the nature of the charges and assisting in his defense. The court denied the defendant's motion.

The conviction of an accused person while he is legally incompetent is violative of state and federal due process. *State* v. *Gonzalez,* 205 Conn. 673, 686, 535 A.2d 345 (1987). The defendant has the burden of showing that, at the time of the denial of his motion for competency examination, "the court had before it specific factual allegations that, if true, would constitute substantial evidence of mental impairment." *State* v. *Watson,* 198 Conn. 598, 605, 504 A.2d 497 (1986). "The trial court should carefully weigh the need for a hearing in each case, but this is not to say that it should be avail-

able on demand. The decision to grant a hearing requires the exercise of sound judicial discretion." *State* v. *Lloyd,* 199 Conn. 359, 366, 507 A.2d 992 (1986).

The record reveals no abuse of the trial court's discretion, and none has been shown by the defendant. The defendant points to his "obstreperous refusal to return from a holding cell to the courtroom, of his banging on the bars of his cell, of his hostility toward his own attorney, and of his being prescribed the antidepressant Desyrel" combined with counsel's report that he was unable to assist in his defense, as justifying a finding of incompetency. It is unclear whether the defendant's actions showed that he was incapable of assisting in his defense, but it seems quite clear that he was unwilling to do so. He had the ability to cooperate but did not want to do so. His obstreperous, uncooperative or belligerent behavior did not obligate the court to order a competency examination, especially in view of the fact that one had been completed within the previous two weeks. The only change between the acknowledgement of competency nine days earlier and this second request was the report that the defendant had become ill and could not concentrate due to the antidepressant drug. Being on medication, in itself, does not render a person incompetent. *State* v. *Gonzalez,* supra, 688. As the trial court properly concluded, the adjustment of the defendant's dosage was the appropriate response to his nervousness, not another competency examination.

Defense counsel's representation that the defendant was incapable of assisting in his defense is insufficient to require a second examination, particularly where the court was in a position to view the defendant during the proceedings on a daily basis. The trial judge was in the advantageous position to view the defendant's demeanor and to evaluate his behavior as it affected his ability to assist in his defense by cooperating with

defense counsel. Thus, the defendant's allegations were insufficient to entitle him to a second competency hearing and the trial court did not violate his right to due process by denying his motion.

The judgment is affirmed.

In this opinion the other judges concurred.