STATE OF CONNECTICUT *v.* KEITH JOHNSON
(10042)

NORCOTT, LAVERY and LANDAU, Js.

Argued June 1—decision released August 18, 1992

*Gregory T. D'Auria,* special public defender, with whom, on the brief, were *James W. Bergenn* and *Steven D. Brown,* and *Katherine Hermes,* certified legal intern, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant, Keith Johnson, appeals from a judgment of conviction rendered after a jury trial. The defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and received a total effective sentence of twenty-three years. On appeal, the defendant claims that the trial court improperly (1) admitted testimony concerning a pretrial identification of the defendant and (2) denied the motion to sever his trial from those of his codefendants. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At about 6:45 p.m. on October 12, 1989, the victim and a companion were walking on Huntington Street in Hartford. Shortly before, they had heard gunshots. They saw three men on the other side of the street, who then crossed the street and began following them. A few moments later, they were stopped by the three men. One of the men said something to the victim's companion that was inaudible to the victim, and the companion fled.

One of the trio then approached the victim and knocked off his eyeglasses. Another of the men then stood next to the victim, placed a handgun to his head, and instructed him to hand over his jacket and his watch. The victim complied. The man then struck the victim on the bridge of the nose with the handgun, fracturing his nose and knocking him down onto the sidewalk. When the victim tried to stand up, the third man, wielding a shotgun, knocked him back to the ground. The man then struck the victim in the eye with the butt of the shotgun and pointed the shotgun at the victim's neck. One of the men then removed cash from the victim's pocket. The men told the victim to leave and quickly left the scene themselves. The victim then went to a friend's house nearby and reported the crime to a police officer shortly thereafter.

In his report to the police, the victim described the man with the handgun as five feet six inches tall and of medium build. The police subsequently took three suspects into custody on that night. The next day, the victim went to the police station, where he was presented with a photographic array containing three sets of eight photographs. Out of the array, the victim selected photographs of three men, one of whom was the defendant. Prior to trial, the defendant made a motion to sever his trial from the trials of the other two men. The trial court denied the motion.

At trial, the victim's pretrial identification of the defendant was admitted into evidence. The victim testified, however, that the man with the gun was actually taller than five feet six inches, and was approximately five feet ten or eleven inches tall. Both at trial and at the hearing on the motion for new trial, the victim observed that the defendant was taller and heavier than the man with the gun he remembered immediately after

the robbery. The defendant is six feet tall and at the time of the robbery weighed about 215 pounds.[1]

The defendant first claims that the trial court improperly admitted testimony concerning the victim's pretrial identification of the defendant because the photographic array procedure was unnecessarily suggestive and wholly unreliable. Because no objection was made to the admission of the pretrial identification at trial, the defendant urges that this claim is reviewable under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1990).[2]

The manner in which we determine whether a defendant's due process rights have been violated by a pretrial identification procedure, such as the photographic array in this case, is well established. "[T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circum-

[1] We note at the outset that our Supreme Court has consistently held that a "partial misdescription of the person being identified goes to the weight rather than to the admissibility of the identification. . . . The weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams,* 203 Conn. 159, 178, 523 A.2d 1284 (1987).

[2] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1990). The conditions as set forth in *Golding* need not be considered in any particular order. *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d 880 (1991).

stances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Howard,* 221 Conn. 447, 453, 604 A.2d 1294 (1992). "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne,* 219 Conn. 93, 106, 591 A.2d 1246 (1991).

The defendant first contends that because there were only twenty-four photographs shown to the victim, the photographic array was unnecessarily suggestive. "The presentation of an array of several photographs to witnesses, including that of the suspect, does not constitute an impermissibly suggestive pretrial identification procedure 'in the absence of any unfairness or other impropriety in the conduct of the exhibit.' " *State* v. *Boscarino,* 204 Conn. 714, 726, 529 A.2d 1260 (1987). There is no requirement that a certain number of photographs be shown to a witness. *State* v. *Watson,* 165 Conn. 577, 591, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). We conclude that the procedure in the present case was not rendered unnecessarily suggestive by the number of photographs shown to the victim.

The defendant also asserts that because there were three sets of photographs and three suspects, the defendant's photograph was emphasized by the police, and the procedure was unnecessarily suggestive. In support of this assertion, the defendant cites the victim's testimony that he believed that each of the three sets of photographs contained a picture of one of the suspects. That belief, however, was not based on any suggestion on the part of the police. The police did not tell the victim that each set would contain a picture of a suspect, nor did they emphasize any particular photographs for the defendant to select.

In *State* v. *Williams,* 203 Conn. 159, 177, 523 A.2d 1284 (1987), our Supreme Court held that when a victim would have inferred without police comment that a photograph of a suspect was present in the array, police comments to that effect did not render the identification procedure unnecessarily suggestive. "When a crime victim is asked to view a display of photographs directly following her description of the perpetrator of the crime, she may reasonably surmise that 'the police may consider one of the persons presented . . . [to be] a suspect in the case.' " Id. Consequently, the victim's subjective belief in the present case, with no police comment, that each set of photographs contained a picture of a suspect does not render the procedure unnecessarily suggestive.

Finally, the defendant contends that the procedure was unnecessarily suggestive because the victim was forced to choose the photograph with the greatest likeness to the defendant from the limited number of photographs in the array. In every photographic array, however, a witness attempts to select a photograph of an individual who he or she believes to be a suspect in the crime in question. Further, in the present case it was the victim, and not the police, who ended the photographic identification procedure.[3] We conclude that the pretrial identification procedure was not unnecessarily suggestive. Therefore, the defendant has not established that a constitutional violation clearly exists

---

[3] At trial, the police officer who showed the victim the photographs testified: "These photos were handed to him in a stack form and he was asked to go through the photos and he started going through the photos, and it is my normal procedure to have the witness or the victims of crime look at all photo arrays. When he came to photo—I believe it was the sixth in this array—he stopped and said, 'This was the person who assaulted me with the handgun last night,' and I said, 'Would you please look at the other two.' He said, 'I don't have to; I am 100 percent sure that this is the person.' I said 'Fine.' "

The victim also testified that he was positive that the photographs that he selected from the photographic array were of his attackers.

and clearly deprived him of a fair trial, and his claim must fail under the third prong of *State* v. *Golding,* supra.

The defendant also claims that the trial court improperly denied his motion to sever his trial from those of his codefendants. The defendant asserts that he was prejudiced by the trial court's denial of his motion to sever because (1) trying him with two codefendants who were positively identified compelled the jury to infer the presence of the defendant as the third attacker, (2) the withdrawal of one of the codefendants during trial presented the jury with an inappropriate opportunity to speculate about the sudden disappearance of a codefendant, and (3) he was the only codefendant who asserted an alibi defense.

"General Statutes § 54-57 and Practice Book § 829 authorize a trial court to order a defendant to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the ' "denial of severance resulted in substantial injustice," and that any resulting prejudice was "beyond the curative power of the court's instructions." ' . . ." (Citations omitted.) *State* v. *Herring,* 210 Conn. 78, 94–95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Indeed, "[j]oint trials are the rule, and separate trials will be ordered only when ' "the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . ." ' *State* v. *Vinal,* 198 Conn. 644, 648, 504 A.2d 1364 (1986)." *State* v. *Taylor,* 21 Conn. App. 244, 246–47, 572 A.2d 1045, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990).

In this case, the trial court thoroughly cautioned the jury against drawing impermissible conclusions as to the withdrawal of one of the codefendants.[4] Also, the fact that the defendant was the only codefendant to present an alibi defense does not render the denial of his motion to sever an abuse of discretion because the defendant's alibi defense was not antagonistic to his codefendant's claims of innocence. Further, the defendant has failed to specify what, if any, evidence was admitted at the joint trial of the defendants that would not have been admissible at the defendant's separate trial.

After a thorough review of the record, we conclude that the trial court's denial of the defendant's motion to sever was a proper exercise of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The court instructed the jury, in part, as follows: "I want to advise you that Mr. Saunders' matter has been resolved without the necessity of your further participation in that case, and you will need concern yourself only with the two remaining defendants, Messrs. Johnson and Harris. I want to tell you very clearly that you must not speculate in any way as to how Mr. Saunders' case was resolved, nor may you consider his absence in any way in resolving the cases of Messrs. Johnson and Harris. That is to say, they are to have no—his absence or his withdrawal from the further participation in this trial is not to be considered by you in any way in your deliberations or in your arrival upon a verdict concerning Mr. Johnson and Mr. Harris . . . . Even though the cases have been tried together, you must deliberate with respect to each count of each information as if the defendant whose case you are then considering had been tried separately. Thus you should keep in mind that your findings in one case do not in themselves establish a basis for similar findings in the other case. . . . Let me remind you again that you must consider each charge against each defendant separately from the other and reach separate verdicts as to each count as against each defendant."