STATE OF CONNECTICUT *v.* MICHAEL ROSE
(10471)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued September 21—decision released November 10, 1992

*Deborah Del Prete Sullivan,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, and *John W. Watson,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4).[1] He was sentenced to a

---

[1] General Statutes § 53a-134 (a) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing con-

term of twenty years imprisonment on the first count and five years imprisonment on the second count, with the sentences ordered to run consecutively. On appeal, the defendant claims that the trial court improperly (1) failed to suppress identification evidence, (2) declined to allow an in-court lineup, and (3) failed to sever the offenses. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. At approximately 12:40 a.m. on March 16, 1990, a black male approached the service counter at the Shell Food Mart at 144 Arch Street in Hamden. He was wearing a San Francisco 49ers jacket, a T-shirt, and jeans. He had a gun drawn and ordered the cashier, Lori Kemp, to remove the cash register drawer and place it on the counter. Kemp did as she was told, and the man took money from the drawer. He then asked her if more money was available, and she gave him additional money from beneath the counter. The robber took between $150 and $200 before fleeing. A security camera recorded the incident on videotape.

Later that day at police headquarters, Kemp viewed 200 to 300 photographs but was unable to identify the robber. On April 6, 1990, the police visited her at another place of employment and showed her an array of eight photographs. She selected the defendant's photograph and identified him as the robber. At trial, Kemp again identified the defendant as the robber.

Five days after the robbery, on March 21, 1990, at approximately 10 p.m., two black males entered the same Shell Food Mart. One of the men, who wore a long heavy jacket, was armed with a gun. At that time, Kemp's mother, Beverly LaFreniere, was working

tained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

behind the cashier's counter. Also present in the store was the owner, Theresa Kubick, who was arranging merchandise in one of the aisles. One of the robbers grabbed Kubick and pushed her behind the counter, while the other, with the gun, ordered LaFreniere to open the cash register. She complied, and the second man took between $100 and $200 from the cash drawer. The armed robber then asked about money under the counter, and instructed the second robber to look beneath the counter for additional money. Kubick stated there was no more money, and the robbers departed. This incident was also recorded by the security camera.

On April 5, 1990, the police visited LaFreniere at the Shell Food Mart and showed her an array of eight photographs. She picked out the defendant's photograph as that of the robber with the gun. On the following day, Kubick separately viewed the same array and also selected the defendant's photograph as that of the robber with the gun. At trial, both LaFreniere and Kubick made in-court identifications of the defendant as the robber with the gun.

## I

The defendant first claims that the trial court should not have admitted into evidence the three out-of-court identifications and the three in-court identifications, because the photographic identifications were unnecessarily suggestive and unreliable. He therefore alleges that his due process rights were violated.[2]

[2] The defendant's claim that the denial of his motion to suppress deprived him "of due process of law" is limited to a federal constitutional claim since he made no separate state constitutional claim. Although we do not do so here, this does not mean that we cannot make a separate state constitutional analysis if we choose to. *State* v. *Hernandez,* 28 Conn. App. 126, 131 n.2, 612 A.2d 88, cert. denied, 223 Conn. 902, 610 A.2d 177 (1992); *State* v. *Geisler,* 25 Conn. App. 282, 284 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

"An in-court identification must be excluded, as violative of the defendant's due process rights, only if it is the product of an unconstitutional pretrial identification procedure." *State* v. *Tatum,* 219 Conn. 721, 726–27, 595 A.2d 322 (1991). "In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the 'totality of the circumstances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); see also *State* v. *Johnson,* 28 Conn. App. 645, 648–49, 612 A.2d 799 (1992).

To determine whether an identification that resulted from an unduly suggestive procedure is nevertheless reliable, we must weigh the corrupting effect of the suggestive procedure in light of certain factors such as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [that person's] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." (Internal quotation marks omitted.) *State* v. *Theriault,* supra, 373–74; *State* v. *Lago,* 28 Conn. App. 9, 18, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992).

The defendant, as the one seeking to suppress identification evidence, bears the initial burden of proving that the identification resulted from an unconstitutional procedure. *State* v. *Payne,* 219 Conn. 93, 106, 591 A.2d 1246 (1991); *State* v. *Johnson,* supra, 649. We conclude that the defendant has failed to establish that the photographic array was impermissibly suggestive. While in light of this failure we need not address the reliabil-

ity of the out-of-court identifications; *State* v. *Outlaw,* 216 Conn. 492, 503, 582 A.2d 751 (1990); even if we were to assume that the procedure was unnecessarily suggestive, the defendant has also failed to meet his burden of proving that, under the totality of the circumstances, these identifications were so unreliable as to be inadmissible into evidence. See *State* v. *Mayette,* 204 Conn. 571, 529 A.2d 673 (1987).

The general description of the armed robber given by the witnesses was of a black male in his early twenties, who was clean shaven and wore a flattop hairstyle with the sides shaved. It is the defendant's claim that while the eight photographs in the array shown to the witnesses all depicted young black males of that general age group, only the defendant's photograph matched the entire description of the robber. He contends that the hairstyles of some were different, that some had beards and mustaches, that some appeared older than the "early twenties," and that some appeared heavier than the robber described by the witnesses. As such, the defendant argues, the array was unnecessarily suggestive in that it focused the witnesses' attention on the defendant's photograph, thereby conveying a message to them that the police suspected him.

At the suppression hearing, Kemp indicated that she had selected the defendant's photograph because of the hairstyle and the cold, uncaring eyes which she recognized as those of the robber. She also observed that one photograph resembled the defendant and showed a clean shaven, young black male, with hair cut close on the sides. The person in the photograph may have had a flattop hairstyle, but she could not tell because "the top of the picture is cut off." The other six photographs showed men with either a beard or a mustache, and five of those six depicted men without flattop hairstyles.

The record is silent as to whether the defendant's photograph was among the hundreds of pictures Kemp viewed on the night of the crime.

LaFreniere testified during the suppression hearing that of the eight photographs shown to her, the defendant's and two others had flattop hairstyles, with two others depicting men with mustaches. She eliminated those because the face of one was totally different from that of the robber and the eyes and face of the second were unlike the robber's eyes and large nose, which she felt made the robber appear mean. She selected the defendant's photograph on the basis of facial features.

Kubick selected the defendant's photograph on the basis of his eyes and long neck. Like LaFreniere, she excluded the others not because of facial hair or hairstyle, but because of facial features.

We conclude that the defendant has not established that the photographic arrays were impermissibly or unnecessarily suggestive. See *State* v. *Hamele,* 188 Conn. 372, 377–78, 449 A.2d 1020 (1982). Having so concluded, we need go no further. *State* v. *Holliman,* 214 Conn. 38, 49, 570 A.2d 680 (1990). Nevertheless, we will consider the reliability of the resulting identifications. See *State* v. *Johnson,* 22 Conn. App. 477, 483, 578 A.2d 1085 (1990).

Under the totality of the circumstances, the victims' identifications of the defendant were reliable. They had ample opportunity to view the unmasked defendant at close range, face-to-face. In each confrontation, there was sufficient lighting and all three victims focused on the robber as he pointed a gun at them. The three victims were able to give him a high degree of attention. As victims, and not mere spectators, they were apt to be more reliable sources of identification. *State* v. *Payne,* supra, 109. They were able to give accurate and

detailed descriptions initially, and they showed no hesitation, but rather a high degree of certainty in their individually selecting the defendant's photograph from the array. The fact that fourteen, fifteen and twenty-one days had passed between the crime and the extrajudicial identifications does not render those identifications unreliable. See *State* v. *Payne,* supra (less than one month between the crime and the identification); *State* v. *Arroyo,* 13 Conn. App. 687, 690, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988) (eighteen days between the crime and the identification). Thus, we conclude that the trial court reasonably could have found the out-of-court identifications to have been reliable under the totality of the circumstances, even had an impermissibly suggestive identification procedure occurred. Because the out-of-court identifications are deemed to be reliable, the in-court identifications are also deemed to be reliable. *State* v. *Piskorski,* 177 Conn. 677, 745, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Johnson,* supra, 22 Conn. App. 484.

We therefore conclude that the trial court properly denied the defendant's motion to suppress.

## II

The defendant next claims that the trial court abused its discretion by denying his motion for an in-court lineup. This denial was made immediately following the court's ruling that the out-of-court identifications were not unnecessarily suggestive, were reliable and, therefore, were admissible.

The defendant concedes that he has no constitutional right to a lineup. " 'There is no constitutional requirement that an in-court identification confrontation be conducted as a lineup or be otherwise free of suggestion. An in-court testimonial identification must be excluded if it is the product of an out-of-court confron-

tation arranged by the state, which was unnecessarily suggestive and conducive to irreparable misidentification.' " *State* v. *Smith,* 200 Conn. 465, 469–70, 512 A.2d 189 (1986), quoting *Commonwealth* v. *Wheeler,* 3 Mass. App. 387, 391, 331 N.E.2d 815 (1975). We earlier concluded that the out-of-court identification procedure in this case was not unnecessarily suggestive and was reliable. The decision whether to allow the defendant an in-court lineup was therefore within the discretion of the trial judge. *State* v. *Smith,* supra, 470; *State* v. *Cubano,* 9 Conn. App. 548, 555, 520 A.2d 250 (1987); see also *State* v. *Felder,* 7 Conn. App. 489, 494–95, 509 A.2d 542 (1986) (procedure for in-court identification is left to trial judge's discretion). We find no abuse of discretion in the trial court's denial of the defendant's motion.

The trial court also denied the defendant's request to have his brother seated next to him at trial. The purpose of that request was to allow another type of lineup. The trial court did not abuse its discretion in denying this request.

### III

Finally, the defendant argues that the trial court improperly denied his motion to sever the offenses. He claims that the cumulative effect of the evidence presented on the two crimes so confused the jury that he was prejudiced and that substantial injustice resulted.

When a defendant stands accused of two or more similar offenses, they may be joined at trial if they are based on related acts that evince a common scheme, intent or motive. *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). The question of joinder or severance rests on the sound discretion of the trial court. *State* v. *Boscarino,* 204 Conn. 714, 720, 529 A.2d 1260 (1987); *State* v. *Carpenter,* 19 Conn. App. 48, 62, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834

(1989). The defendant bears the heavy burden of showing that a denial of severance resulted in substantial injustice beyond the curative power of jury instructions. *State* v. *Herring*, 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Whether a joint trial will be substantially prejudicial to the rights of the defendant means something more than that it will be less advantageous to the defendant. *State* v. *Bell,* 188 Conn. 406, 411, 450 A.2d 356 (1982).

Our Supreme Court has held that a trial court should consider several factors in determining whether severance is required. "These factors include: (1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings,* 216 Conn. 647, 658, 583 A.2d 915 (1990). Our review of the record leads us to conclude that joinder did not result in substantial injustice.

While the perpetrators of the two robberies were not identically dressed, and the armed robber was perhaps holding a different type of revolver in a different hand, the crimes were so similar as to lead reasonably to the conclusion that they were part of a continuing course of criminal conduct and a common scheme. Not only were the crimes at the same location, they occurred within five days of each other, and were generally similar in nature. The armed robber in each incident appeared similar, used a revolver, and demanded money from the cash register. While money was not usually kept beneath the service counter, the robber

of March 16 was given money from under the counter, and the robber of March 21 specifically asked for money he thought might be kept under the counter. The victims at both robberies were female employees.

We conclude that the trial court did not abuse its discretion in denying the defendant's motion for severance since the two robberies were similar events. See *State* v. *Greene,* supra.

Even if we accept the defendant's argument that the evidence of one robbery would have been inadmissible at the trial of the other, we cannot agree that we must therefore conclude that severance was required. First, while the two events were similar, the charges were based on specific facts that were discrete and easily distinguishable, with different victims as witnesses. The state's presentation of the case was comprehensible to the jury and logically presented; it was organized chronologically by separate incident. Before evidence was presented, the trial court read to the jury the state's allegations as to separate robberies occurring on two separate dates. The crimes were not of a violent nature, nor did they involve brutal or shocking conduct by the defendant. The trial was neither complex nor long; it was completed in two days with six witnesses and twenty-three exhibits. Additionally, the trial court gave an instruction that emphasized to the jury that the defendant was on trial for two separate crimes of first degree robbery, that its findings in each case should be separate and distinct from its findings in the other, and that each offense should be considered separately.

We conclude that the trial court's decision on joinder did not result in substantial injustice and that the trial court did not abuse its discretion in denying the defendant's motion to sever.

The judgment is affirmed.

In this opinion the other judges concurred.