STATE OF CONNECTICUT *v.* PARNELL JACKSON
(10738)

LANDAU, HEIMAN and FREEDMAN, Js.

Argued November 30, 1992—decision released February 9, 1993

*Brian M. O'Connell,* for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Vicki O'Donnell,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[1] sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1),[2] and unlawful restraint in the second degree in violation of General Statutes § 53a-96.[3] On appeal, the defendant claims that (1) the evidence was insufficient to sustain the convictions and (2) the trial court's failure to instruct the jury on the issue of intent with respect to the sexual assault offenses requires a new trial on those charges. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On July 19, 1990, the female victim and a friend, Donna Thibodeau, went to Dagny's, a Hartford night-

---

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury . . . ."

[2] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person . . . or (B) by the threat of use of force against such other person . . . which reasonably causes such other person to fear physical injury . . . ."

General Statutes § 53a-65 (3) provides that for purposes of § 53a-72a sexual contact means "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person."

[3] General Statutes § 53a-96 (a) provides: "A person is guilty of unlawful restraint in the second degree when he restrains another person."

General Statutes § 53a-91 (1) provides in pertinent part that for purposes of § 53a-96 restrain means "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty . . . by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

club, arriving at approximately 8:30 p.m. There, they met Shane O'Brien and several other friends. The defendant, who was a friend of O'Brien's but who was not acquainted with the victim, joined the group during the evening. After drinking beer at Dagny's for approximately two and one-half hours, the group proceeded to North Shore, a nightclub located on Asylum Street in Hartford.

At about midnight, the victim left the nightclub for a breath of fresh air. While outside, she agreed to accompany the defendant to search for a mutual friend, Billy Jackson, who was in possession of the defendant's car keys. The defendant stated that he was concerned that Jackson had taken his car without permission. Jackson had never borrowed the defendant's car without permission, and he gave the defendant no reason to believe that he would do so that evening. After walking a short distance, they located the defendant's car and proceeded to walk back toward North Shore. When the defendant entered a parking lot, the victim followed, believing that the parking lot provided a shortcut to North Shore.

The defendant walked toward an alcove located in that parking lot, stating that he needed to relieve himself. While the victim was waiting, the defendant pulled her by the arm into the alcove. With his right hand on her shoulder and his left hand over her mouth, the defendant asked the victim if she had ever been kissed by a black man. The victim protested, stated that she wanted to return to her friends and tried to leave the alcove. The victim then tried to push past the defendant in order to leave the alcove.

Despite the victim's resistance to the defendant's advances, the defendant pushed the victim against the alcove wall and tried to kiss her. The defendant then lowered his pants, reached under the victim's skirt and

attempted to push down her underwear. The victim kept pulling her underwear up and pushing her skirt down. There was testimony that the two "were fighting like this, back and forth." The defendant next placed his hand behind the victim's neck and pushed her down to perform oral sex. The defendant put his penis into the victim's mouth, moving it back and forth for a few minutes. The defendant then pulled the victim up and again began to manipulate her skirt and underwear, this time trying to insert his penis into her vagina. The victim blocked his attempts with her hand. Angry that the victim was not cooperating, the defendant again pushed the victim down by the neck in order to perform oral sex for approximately one minute.

The victim was frightened, crying and shaking during her encounter with the defendant in the alcove, too frightened to attempt to leave. When the victim saw three men walking toward their car in the nearby parking lot, she ran toward the car, jumping in the driver's seat. Extremely upset and screaming, the victim told onlookers to keep the defendant away from her. After the defendant left the immediate area of the car, the victim told the men and others that she had been sexually assaulted by the defendant.

When the police arrived, the victim was still upset and crying. After indicating that she had been sexually assaulted, the victim was taken by ambulance to St. Francis Hospital where she was examined. During the procedure, the victim was still upset, tearful and a bit withdrawn. Similar behavior continued over the next several days after the sexual assault.

At trial, the defendant maintained that his sexual contact with the victim was consensual. He denied that any form of intercourse took place. He introduced testimony intended to support his argument that the vic-

tim fabricated the story in order to enrage her alleged boyfriend, O'Brien, who was allegedly flirting with Thibodeau.

The defendant was charged with three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and one count of unlawful restraint in the second degree in violation of General Statutes § 53a-96 (a). He was acquitted of the first charge of sexual assault in the first degree. He was acquitted of the second charge of sexual assault in the first degree but was convicted of sexual assault in the third degree in violation of General Statutes § 53a-72 (a) (1) as a "lesser included offense" of that charge.[4] The defendant was also convicted of the third charge of sexual assault in the first degree and unlawful restraint in the second degree. This appeal followed.

I

The defendant first claims that the evidence at trial was insufficient to sustain the convictions.[5] Specifically,

---

[4] The defendant was convicted of sexual assault in the third degree after the trial court instructed the jury, pursuant to the defendant's request, that it could consider the crime of sexual assault in the third degree as a "lesser included offense" of the charge of sexual assault in the first degree pertaining to that count of the substitute information alleging sexual assault in the first degree by way of penis-vagina intercourse. Although sexual assault in the first degree and sexual assault in the third degree do not stand in relation of greater and lesser offenses; *State* v. *Milardo*, 224 Conn. 397, 416–17, 618 A.2d 1347 (1993); the defendant does not challenge his conviction of sexual assault in the third degree on this basis, and we note that the constitutional right to notice of the charges against an accused is not implicated where the accused has requested that the jury consider the offense not encompassed by the information. See *State* v. *Scognamiglio*, 202 Conn. 18, 23–25, 519 A.2d 607 (1987).

[5] With respect to the sexual assault convictions, the defendant frames the issue as whether "the evidence *submitted by the state* [was] insufficient to sustain the convictions of sexual assault." (Emphasis added.) Because the defendant elected to put on evidence after the denial of his motion for judgment of acquittal at the end of the state's evidence, he is deemed to have waived his right to appellate review of the sufficiency of the evidence

with respect to the sexual assault convictions, the defendant argues that the evidence failed to establish beyond a reasonable doubt the use of force or a threat of use of force by the defendant and likewise failed to establish beyond a reasonable doubt that the defendant intended to exert force. The defendant also asserts that the same deficiencies in the evidence underscore the absence of any restraint of the victim or any intent to restrain her on his part and therefore require that his conviction for unlawful restraint be overturned. We are not persuaded.

"An accused has a fundamental right to an acquittal under both the United States constitution and the Connecticut constitution where the state has failed to prove beyond a reasonable doubt each and every element of the crime charged. *In re Winship,* 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Hill,* 201 Conn. 505, 512, 523 A.2d 1252 (1986). Appellate review of a claim of insufficiency of the evidence is a twofold task: We must first review the evidence by construing it in the light most favorable to sustaining the verdict. We must then determine whether, on the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State v. Marra,* 215 Conn. 716, 726, 579 A.2d 9 (1990)." *State v. Ortiz,* 29 Conn. App. 825, 832, 618 A.2d 547 (1993).

---

at the completion of the state's case. We thus review the entirety of the evidence taking into account both the evidence offered by the state and that offered by the defendant. *State v. Commerford,* 30 Conn. App. 26, 33, 618 A.2d 574 (1993); *State v. Wolff,* 29 Conn. App. 524, 527–28, 616 A.2d 1143 (1992); *State v. Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992).

## A

In order to convict a person of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1); see footnote 1, supra; or sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1); see footnote 2, supra; the state must prove that the accused compelled the victim to engage in sexual intercourse or compelled the victim to submit to sexual contact by the use of force or by the threat of use of force which reasonably causes the victim to fear physical injury. *State* v. *Smith,* 210 Conn. 132, 136–43, 554 A.2d 713 (1989); *State* v. *Mezrioui,* 26 Conn. App. 395, 398–400, 602 A.2d 29, cert. denied, 224 Conn. 909, 617 A.2d 169 (1992). The defendant argues that the victim's testimony that the defendant did not use a great amount of force during the incident, that she did not attempt to clench her teeth, claw, or otherwise resist the defendant during oral sex, and that the defendant did not hold his hands against her entire body or restrain her arms, demonstrates the lack of "earnest resistance" on the part of the victim necessary to show the use of force by the defendant. See, e.g., *State* v. *Morgan,* 170 Conn. 110, 112, 365 A.2d 99 (1976). The defendant further argues that no threat may be reasonably construed from the defendant's conduct in the absence of physical violence or any explicit threat by the defendant to do something of a violent nature to the victim. We disagree.

The evidence established beyond a reasonable doubt that this was a forcible sexual assault by the defendant. The defendant began the sexual encounter by placing his hand over the victim's mouth. Despite her expressed desire to leave the alcove and her attempt to do so, the defendant pushed the victim against the alcove wall and continued to make sexual advances toward her. The victim resisted those advances repeat-

edly by attempting to put her skirt and underwear back into place after the defendant attempted to move them. Thereafter, the defendant twice pushed the victim down by the neck, forcing her to perform oral sex. In between those events, the victim blocked the defendant's attempts at vaginal intercourse with her hand. During the entire time, the victim was scared, crying and shaking.

"Although the victim never said 'no' or 'stop,' such an explicit verbal rejection of unwanted sexual advances is not required . . . . Similarly, it is not necessary that the victim physically resist the unwanted sexual advances." *State* v. *Mezrioui,* supra, 399; *State* v. *Mackor,* 11 Conn. App. 316, 323, 527 A.2d 710 (1987). The defendant's reliance on cases in which the sexual assault was compelled through physical violence or a threat of physical violence; see, e.g., *State* v. *Franko,* 199 Conn. 481, 483, 508 A.2d 22 (1986) (victim choked until she blacked out); *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986) (victim choked); *State* v. *Kish,* 186 Conn. 757, 762, 443 A.2d 1274 (1982) (victim threatened with physical injury); is misplaced. While those cases illustrate that proof of physical violence is sufficient to establish that the sexual assault was compelled by the use of force or a threat of the use of force, nothing in those cases, or elsewhere in our law, suggests that proof of physical violence is necessary to establish that the sexual intercourse or contact has been compelled by the use of force or a threat of the use of force. See *State* v. *Hufford,* 205 Conn. 386, 392, 533 A.2d 866 (1987) (use of force proven by "either violence or some other form of physical coercion"); see also General Statutes § 53a-65 (7) (defining "use of force" as not only the use of physical violence, but also as the "use of physical force . . . or superior physical strength against the victim"). To the contrary, it is not required that a sexual assault victim resist to the point of physical

injury in order to establish that she did not consent to the sexual advances.[6] The force used or threatened to be used in the course of committing sexual assault in the first and third degrees is that necessary to compel the victim to engage in sexual intercourse or to submit to sexual contact. *State* v. *Rogers,* 198 Conn. 53, 62, 502 A.2d 360 (1985). If such force is proven beyond a reasonable doubt, lack of consent is implicit. *State* v. *Clinkscales,* 21 Conn. App. 411, 419, 574 A.2d 243 (1990).

The fact that the victim eventually submitted to the defendant's demands after he refused to permit her to leave the seclusion of the alcove as she requested and after he applied force to her person in order to further the sexual contact and intercourse is sufficient to support a conclusion that the defendant used both force and the threat of force, which reasonably caused the victim to fear physical injury, in order to compel the victim to engage in sexual intercourse and to submit to sexual contact. *State* v. *Mezrioui,* supra, 399–400. Moreover, the defendant's use of such force in response to the victim's lack of consent makes it clear that the evidence established the necessary "criminal intent" to support a conviction. See *State* v. *Smith,* supra. "Only by entertaining the fantasy that 'no' meant 'yes,' and that a display of distaste meant affection, could the defendant have believed that [the victim's] behavior

---

[6] As the state aptly noted at oral argument: "The defendant is asking this court to adopt an earnest resistance to sexual advances exception [to a charge of sexual assault] but that is not the current state of the law, nor is physical violence by the perpetrator required. We have come beyond that in the state of Connecticut. Instead, it is a question of force and that is a question of fact for the jury. . . . A victim might not want to fight off [the perpetrator]. A victim might just hope that the perpetrator gets it over with quickly and goes away, to minimize the assault, to minimize the anguish, just to minimize what is happening at that particular time. To require physical resistance would punish a victim unnecessarily when the victim is already being assaulted."

toward him indicated consent. Such a distorted view of her conduct would not have been reasonable. The evidence was more than sufficient to support the verdict." Id., 143.

## B

Because the record contains sufficient evidence from which the trier of fact could reasonably infer both the use of force and threat of the use of force upon the victim during the sexual assaults, the jury could properly conclude that the defendant had intentionally restricted the victim's movement without her consent. See *State v. Drake,* 19 Conn. App. 396, 400–401, 562 A.2d 1130 (1989). Consequently, there was sufficient evidence to support the defendant's conviction for unlawful restraint in the second degree. See footnote 3, supra.

## II

The defendant next challenges the trial court's failure to instruct the jury on the issue of intent as it relates to the offenses of sexual assault in the first degree and sexual assault in the third degree.[7] This claim requires little discussion, as it is controlled by *State v. Pierson,* 201 Conn. 211, 514 A.2d 724 (1986), and *State v. Johnson,* 22 Conn. App. 477, 578 A.2d 1058, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990).

Sexual assault in the first degree requires proof of general intent, that is "[t]hat the defendant intended to perform the physical acts that constitute the crime of sexual assault." *State v. Pierson,* supra, 216.[8]

---

[7] "Although the defendant did not properly preserve this claim for appeal, we will review it under *State v. Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *State v. Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); because the claim involves an essential element of the crime on which the failure to instruct may result in a due process violation. *State v. Pollitt,* 205 Conn. 132, 150, 531 A.2d 125 (1987)." *State v. Johnson,* 22 Conn. App. 477, 485 n.2, 578 A.2d 1058, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990).

[8] Although sexual assault in the first degree is a general intent crime, a similar conclusion is not as clear with respect to sexual assault in the third

Nonetheless, "[o]ur acknowledgement of the fundamental principle that a criminal act must be volitional does not mean that a charge to a jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary and he has made no such claim either in the trial court or on appeal." Id., 217. Thus, "no special instructions as to intent are required for a general intent crime *unless* something in the evidence presented indicates that the defendant acted involuntarily, without sufficient mental capacity, under duress or while entrapped." (Emphasis in original.) *State* v. *Johnson,* supra, 485. No such evidence was presented or argument made in this case. Consequently, the defendant's claim is without merit.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

degree, which requires proof of sexual contact "for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating [the victim]." General Statutes § 53a-65 (3). If sexual assault in the third degree is a specific intent crime, then it is clear from our review of the jury instructions that the trial court adequately instructed the jury on this element of the crime. If, on the other hand, sexual assault in the third degree, like sexual assault in the first degree, is a general intent crime, then the defendant's claim must fail for the reasons set forth in our discussion of sexual assault in the first degree.

[9] The defendant's suggestion in his brief that, absent a charge on general intent in this case, "the jury is free to convict an accused even if they reasonably believed that he was engaging in consensual sexual activity," is equally without merit. See *State* v. *Smith,* 210 Conn. 132, 136–44, 554 A.2d 713 (1989).