OPINION OF THE COURT
Simons, J.
The People appeal from orders of County Court which reversed defendants’ convictions rendered by various Justice Courts of Chautauqua County for driving while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2]) and dismissed the informations. The common issue presented in each case is whether the results of blood alcohol tests performed by hospital technologists using the DuPont Automatic Clinical Analyzer are admissible in evidence per se or are subject to the foundation requirements outlined in People v Freeland (68 NY2d 699) and People v Mertz (68 NY2d 136).
In each case defendant was charged with violating section *484 1192 (2) of the Vehicle and Traffic Law and blood samples were taken. The samples were analyzed at the Jamestown General Hospital, an institution holding a permit granted by the New York State Department of Health to perform blood tests (see, Public Health Law § 574 [1]; § 575 [2]). The hospital provides blood alcohol tests for the local Sheriff pursuant to a contract and is paid solely on the basis of the time spent performing the tests and testifying, regardless of whether a conviction results.
The tests were performed by hospital technologists certified to perform the laboratory analyses of blood and urine alcohol by the Department of Health. The results were obtained by using a DuPont Automatic Clinical Analyzer (DuPont ACA), a spectrophotometer that employs a reagent pack solution purchased by the hospital from a private company to test the blood alcohol content of each sample. The technologists were trained to operate the DuPont ACA but were not experts in the internal workings of the machine and do not possess degrees in chemistry (see, 10 NYCRR 59.3 [b] [1], [2], [3], [4]).
The blood alcohol test results of each defendant indicated levels exceeding .10 and the People submitted them in evidence accompanied by testimony or business records showing that the DuPont ACA was working properly on the day the test was performed. The People also offered evidence, through the testimony of the technologist performing the test, that the proper chemical solution for which the machine was calibrated had been used when conducting the test and that the test was properly administered.
In People v Mertz (68 NY2d 136, 148, supra), we held that before breathalyzer results could be admitted in evidence the People must establish that the machine is accurate, that it was working properly when the test was performed and that the test was properly administered. We noted that the accuracy of breathalyzers for measuring blood alcohol content was generally recognized and that tests were admissible if the People submitted evidence satisfying the latter two conditions (see, People v Mertz, supra; see also, People v Freeland, 68 NY2d 699, 700, supra; People v Gower, 42 NY2d 117, 121). In the cases before us, we are concerned with the first requirement, proof that the DuPont ACA is accurate for the test performed.
The People contend that the blood alcohol test results should be admitted in evidence per se, without foundation, *485 because they were performed in a hospital by regular personnel using standard methods and equipment and that the permits issued to the hospital laboratory and the individual technologists ensure their reliability. As an alternative they urge that the laboratory technicians, due to their experience and training on the DuPont ACA, are experts in blood alcohol analysis and may state their opinion on the blood alcohol content of a sample based on out-of-court evidence (accord, People v Porter, 46 AD2d 307).
State regulations require that a blood alcohol test reading be accurate within .01 grams per 100 milliliters (Chemical Analysis of Blood, Urine, Breath or Saliva for Alcoholic Content, 10 NYCRR 59.2 [b] [2]). In the cases before us no scientific evidence was presented to establish that the DuPont ACA is reliable for determining blood alcohol content generally or with sufficient accuracy to meet that standard. Indeed, in People v Campbell a technologist testified that the acceptable range set by the manufacturers for the DuPont ACA was outside this .01 standard. Moreover, the State Health Department’s permit does not satisfy the accuracy requirement. Although the machine may be accurate to show alcohol toxicity or possible drug interactions for general purposes, there is no proof that it is "capable of accurately discerning the critical distinction between a legally permissible blood alcohol content and that which is statutorily proscribed” (People v Freeland, supra, at 701).
The People cite cases for the proposition that hospital tests are admissible in evidence per se under the business records exception to the hearsay rule if performed by regular personnel. Those. cases, however, involve civil matters and well recognized procedures or equipment (see, Stein v Lebowitz-Pine View Hotel, 111 AD2d 572, 573 [use of autopsy report in action for wrongful death]; Mayole v Crystal & Son, 266 App Div 1008 [EEG tests]). In criminal matters the scientific reliability and accuracy of a machine measuring blood alcohol content for forensic purposes must be established before such test results may be admitted in evidence.
Finally, contrary to the People’s claim, the technologist cannot be equated with a chemist or toxicologist who can render an opinion of blood alcohol content based on firsthand knowledge and experience (see, People v Leis, 13 AD2d 22). The technologist, even though granted a permit by the State, does not qualify as an expert on the internal workings of the *486 machine and his or her testimony does not satisfy the distinct foundational requirement that the machine test blood alcohol content accurately within required specifications (see, People v Freeland, 68 NY2d 699, 701, supra; People v Mertz, 68 NY2d 136, 148, supra).
In People v McDonald defendant pleaded guilty to the charge of driving while intoxicated (Vehicle and Traffic Law § 1192 [2]). Pursuant to an agreement entered into with the prosecutor, and sanctioned by the court, the People recited the evidence they would present at trial and defendant then attempted to preserve his right to raise on appeal whether the People had established a proper foundation on the accuracy of the DuPont ACA. In People v Thomas (53 NY2d 338, 342-345) we noted that the right to appellate review of certain issues raised before the plea is forfeited by operation of law as a consequence of a guilty plea. Where a defendant has by his plea admitted commission of the crime with which he is charged, the plea more than a confession, signals defendant’s intention not to litigate the question of his guilt and normally renders irrelevant any consideration of whether his conviction should be reversed for evidentiary error (see, People v Taylor, 65 NY2d 1, 5; People v Evans, 58 NY2d 14, 21, n 1; People v Di Raffaele, 55 NY2d 234, 240). Therefore, the order of the County. Court reversing the trial court’s conviction on the guilty plea was improper and defendant’s conviction of driving under the influence of alcohol should be reinstated (see, People v O’Brien, 56 NY2d 1009,1010, affg 84 AD2d 567).
Accordingly, in People v Campbell, People v Frattalone and People v Raynor, the orders should be affirmed. In People v McDonald the order should be reversed and the judgment of the Town Court convicting defendant of driving while intoxicated (Vehicle and Traffic Law § 1192 [2]) reinstated.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
In People v Campbell, People v Frattalone and People v Raynor: On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed.
In People v McDonald: On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed and judgment of Busti Town Court reinstated.