# STATE OF CONNECTICUT *v.* JAMES DESLAURIER
## (10352)

DUPONT, C. J., O'CONNELL and FREEDMAN, JS.

Argued February 18—decision released August 17, 1993

*Paul D. Eschuk,* assistant public defender, for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,* state's attorney, and *Sandra Tullius,* deputy assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d[1] and operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes

---

[1] General Statutes § 53a-60d (a) provides: "A person is guilty of assault in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes serious physical injury to another person as a consequence of the effect of such liquor or drug."

§ 14-227a.[2] The defendant claims that the trial court improperly (1) denied his motion to strike the amended information, (2) denied his motion for a competency examination, (3) admitted blood test results into evidence, (4) admitted statements made by the defendant into evidence, and (5) admitted a search warrant containing hearsay into evidence. We affirm the judgment of the trial court.

The genesis of this case is a one car automobile accident in which the defendant and his passenger, Richard Hinds, were both injured and transported by ambulance to a hospital. Much of the evidence and some of the defendant's claims arise out of the defendant's conduct at the accident scene and the hospital. Necessary factual details are included in the analysis of individual claims.

I

AMENDED INFORMATION

On November 6, 1990, the defendant pleaded not guilty to charges of reckless driving and operating a motor vehicle while under the influence of alcohol, and elected a jury trial. The voir dire jury selection process had begun and three jurors had been chosen by the time court opened the following morning. The state then informed the court that it had just learned that the defendant's passenger had sustained injuries in the accident causing paraplegia.[3] Consequently, the state filed

---

[2] General Statutes § 14-227a (a) provides in pertinent part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundreths of one per cent or more of alcohol, by weight."

[3] The passenger is confined to a wheelchair and has no control of bodily functions below his waist.

a substitute information charging the defendant with assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d as well as operating a motor vehicle while under the influence of liquor. The defendant neither objected nor assented but requested a two month continuance to prepare a defense and to hire an expert to examine the passenger. The trial court allowed the substitute information, granted the defendant's request for a two month continuance and also gave him one month to file pretrial motions addressed to the new information. The trial court remarked that, although three jurors had been selected, it would be appropriate to start over when the case was reached for trial. It then released the three selected jurors.

On December 4, 1990, the defendant moved to strike the substitute information on the grounds that it was filed after the trial had started and, thus, violated Practice Book § 624. The trial court denied the motion and the defendant makes it his first ground of appeal.

The determination of this issue depends on whether Practice Book § 623[4] or Practice Book § 624[5] controls. Section 623 pertains to amendment of informations before trial, and § 624 pertains to amendment of informations after commencement of trial. The question

---

[4] Practice Book § 623 provides: "*If the trial has not commenced,* the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." (Emphasis added.)

[5] Practice Book § 624 provides: "*After commencement of the trial* for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant." (Emphasis added.)

before us, therefore, is whether the trial had commenced when the substitute information was filed.

We begin our analysis by noting what we are not deciding. First, this is not a question of whether double jeopardy attached when the first jury voir dire began. The United States Supreme Court has firmly established that double jeopardy attaches when the jury is empaneled and sworn;[6] *Downum* v. *United States,* 372 U.S. 734, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963); and this point of attachment is part of the fifth amendment constitutional guarantee. *Crist* v. *Bretz,* 437 U.S. 28, 38–39, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1977). This provision of the fifth amendment is applicable to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); see *State* v. *Van Sant,* 198 Conn. 369, 376, 503 A.2d 557 (1986); *State* v. *Roy,* 182 Conn. 382, 385, 438 A.2d 128 (1980). Moreover, the point at which jeopardy attaches is not the result of arbitrary line drawing, such that it may be moved a few steps forward or backward without constitutional significance, but is fixed as an integral part of the constitutional guarantee.[7] *Crist* v. *Bretz,* supra, 37–38.

Second, we are not concerned with a claim that the state, in the exercise of due diligence, should have known of the seriousness of the passenger's injuries in a more timely fashion. Lack of due diligence and perhaps a resultant speedy trial denial; see *Doggett* v. *United States,*    U.S.   , 112 S. Ct. 686, 120 L. Ed. 2d 520 (1992); were not raised by the defendant and, therefore, are not before us.

---

[6] In nonjury trials, jeopardy attaches when the first witness is sworn. *Serfass* v. *United States,* 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1974).

[7] But see *State* v. *Roy,* 182 Conn. 382, 438 A.2d 128 (1980), in which Connecticut disallowed a double jeopardy claim on the ground of manifest necessity after a jury had been sworn but no evidence taken.

Accordingly, we must decide this issue solely by construing the rules of practice. In *State* v. *Cole,* 8 Conn. App. 545, 550–52, 513 A.2d 752 (1986), this court analyzed Practice Book §§ 623 and 624 in relation to the voir dire process and concluded that the questioning of prospective jurors would be extremely hampered if the charges against the defendant could be changed after the voir dire had been completed or even after it was under way. For example, if a defendant was charged with robbery, defense counsel's voir dire questions would be framed to determine any bias or prejudice of prospective jurors against persons charged with crimes of theft. For purposes of this example, we will assume that after the voir dire started, the state learned that when the defendant was arrested on the robbery charge, he had unlawful drugs on his person and, accordingly, the state elected to amend the information to include appropriate drug charges. Obviously, defense counsel would not have examined the prospective jurors to uncover possible bias or prejudice concerning drug crimes and the entire voir dire would be severely impaired if not completely emasculated.

"Without proper notice of the precise charges against him, a defendant is hampered in the effective questioning of the veniremen to discover and evaluate any bias or prejudice which they may harbor as to the particular crime or crimes involved. It would be difficult to ask appropriate questions in an effort to discover such possible bias or prejudice unless the defendant has notice of the particular charges against him." Id., 551. Consequently, the *Cole* court declared that for purposes of §§ 623 and 624 a criminal trial begins with the voir dire of prospective jurors. Id., 552.

*Cole* would be applicable to the present case if the defendant had been deprived of the opportunity to voir dire the jurors *before whom he was tried* on all of the charges against him. That is not the situation here,

however. This case is more nearly analogous to *State* v. *Parker,* 25 Conn. App. 619, 595 A.2d 939 (1991), which also involved the issue of whether § 623 or § 624 applied. In *Parker,* the trial court declared a mistrial after the jury was unable to reach a verdict on a charge of intentional assault in violation of General Statutes § 53a-59 (a) (1). After the mistrial, but before commencement of a second trial, the state filed a substitute information adding a charge of reckless assault in violation of General Statutes § 53a-59 (a) (3).

Parker moved to strike the substitute information arguing "that once the first trial began, any subsequent amendments to the information occurred '[a]fter commencement of the trial,' notwithstanding the intervening mistrial." Id., 622. This court rejected Parker's argument concluding "that the provisions of § 623 apply where the state seeks to amend the information or file a substitute information after a mistrial and before a retrial." Id. "Upon mistrial, the criminal prosecution is returned to the pretrial stage. The defendant after the mistrial, therefore, was in the position of one who awaits the commencement of trial. This conclusion does not undermine the due process concerns of §§ 623 and 624 to protect a defendant's right to fair and adequate notice of the charges against him so as to afford him an opportunity to prepare an adequate defense." (Internal quotation marks omitted.) Id.

For purposes of this case, aborting the partially completed voir dire was the functional equivalent of a mistrial. The case was returned to the pretrial stage and the defendant was given the opportunity to file pretrial motions addressing the new substitute information.

Just as an entirely new jury array was required after the mistrial in *Parker,* an entirely new array was furnished here. The original three jurors had been dis-

missed and the partial voir dire became merely part of the history of the case. The trial culminating in the defendant's conviction commenced with the voir dire of the jury that rendered the verdict. Accordingly, the pretrial rule of § 623 applied and the trial court properly denied the defendant's motion to strike the substitute information.

## II

### COMPETENCY EXAMINATION

On January 18, 1991, the defendant's counsel made a motion for examination of the defendant's competency under General Statutes § 54-56d.[8] He supported this motion by representing that the defendant had behaved irrationally when counsel informed him of the result of plea bargaining discussions including the possible outcome of a jury trial and the extent of a possible period of incarceration. Counsel also represented that at a pretrial conference the previous day, the defendant had difficulty forming sentences, comprehending the charges against him and understanding his relationship with Hines, the passenger, who is his stepbrother.

The trial court conducted a comprehensive, searching examination through questions addressed directly to the defendant. Following this canvass, the trial court

---

[8] General Statutes § 54-56d provides in pertinent part: "(a) COMPETENCY REQUIRED. DEFINITION. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

"(b) PRESUMPTION OF COMPETENCY. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by clear and convincing evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry."

found that the defendant understood the charges against him and was able to proceed with the case.[9]

It is axiomatic that if a person is not competent to stand trial, his conviction violates the due process guarantee of the fourteenth amendment of the constitution of the United States and article first, § 8, of the constitution of Connecticut. *Gold* v. *Warden,* 222 Conn. 312, 313 n.3, 610 A.2d 1153 (1992); *State* v. *Johnson,* 22 Conn. App. 477, 488, 578 A.2d 1085, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990). This constitutional mandate is codified in General Statutes § 54-56d (a) which provides that "a defendant shall not be tried, convicted or sentenced while he is not competent." *State* v. *Gonzalez,* 205 Conn. 673, 687, 535 A.2d 345 (1987). Whether a defendant is competent to stand trial is a question of law to be determined by the trial court. *State* v. *DeAngelis,* 200 Conn. 224, 242, 511 A.2d 310 (1986). This determination is to be made by the trial court after a hearing. General Statutes § 54-56d (e). "The trial court should carefully weigh the need for a hearing in each case, but this is not to say that it should be available on demand. The decision to grant a hearing requires the exercise of sound judicial discretion." *State* v. *Lloyd,* 199 Conn. 359, 366, 507 A.2d 992 (1986); *State* v. *Johnson,* supra, 488–89. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done."

[9] In making its ruling, the trial court stated: "I'm not satisfied that there has been an adequate showing that a [General Statutes] § 54-56d examination is appropriate. He seems to understand the charges. He understands the penalty that he's facing. He understands there was a plea bargain. He rejects the plea bargain apparently which, of course, is his right under our procedure. And I think as far as I can determine he is able to proceed with the case. The request for a § 54-56d examination is denied."

(Citation omitted; internal quotation marks omitted.) *State* v. *Reddick,* 224 Conn. 445, 467, 619 A.2d 453 (1993).

In the present case, an experienced criminal court judge carefully canvassed the defendant. The canvass disclosed that the defendant understood the charges against him and his maximum prison sentence exposure and that he was capable of accepting or rejecting a proposed plea bargain. The court also noted that the defendant had no difficulty forming sentences and he behaved rationally during the canvass. "It is the job of the trial judge to examine the facts before him and to determine the need for a hearing. He is in the best position to weigh the evidence and to evaluate the credibility of the defendant." *State* v. *Janice,* 20 Conn. App. 212, 214, 563 A.2d 553 (1989). No abuse of discretion is present on the record in this case. The trial court properly denied the defendant's motion for a competency examination.

## III

### BLOOD TESTS RESULTS

The defendant was taken by ambulance to Johnson Memorial Hospital in Stafford Springs where he came under the care of John Modica, the emergency room physician on duty. Modica diagnosed the defendant as suffering from facial lacerations, a contusion to his left chest wall and an irregular heart beat. In accordance with hospital policy in trauma cases, Modica ordered blood drawn and analyzed in the hospital laboratory. The analysis showed a serum blood alcohol concentration of 0.179 which translated into a whole blood alcohol concentration of 0.158 percent.

Sometime after the blood test, which was administered for medical diagnostic purposes, Trooper Tony Dostanko of the state police asked the defendant to sub-

mit to a blood test pursuant to General Statutes § 14-277a (c)[10] for police purposes. The defendant refused. Subsequently, a search warrant was issued, pursuant to § 14-227a (*l*), authorizing the seizure of the hospital records of the chemical analysis of the defendant's blood which had been drawn pursuant to Modica's order. The trial court admitted the results of the hospital blood tests into evidence.

A

The defendant argues that the hospital blood test should not have been admitted for two reasons. First,

[10] General Statutes § 14-227a (c) provides: "ADMISSIBILITY OF CHEMICAL ANALYSIS. Except as provided in subsection (d) of this section, in any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such test was checked for accuracy immediately before and after such test was performed by a person certified by the department of health services; (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed, provided however the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented which demonstrates that the test results and the analysis thereof accurately reflect the blood alcohol content at the time of the alleged offense."

he contends that the test did not comply with General Statutes § 14-227a (e)[11] and department of health regulations §§ 14-227a-1 through 14-227a-9.[12] This argument requires a comparison of subsections (c) (the police officer subsection)[13] and (*l*) (the hospital subsection)[14]

[11] General Statutes § 14-227a (e) provides: "CERTIFICATION OF METHODS AND TYPES OF CHEMICAL TESTS. The commissioner of health services shall ascertain the reliability of each method and type of device offered for chemical testing purposes of blood, of breath and of urine and certify those methods and types which he finds suitable for use in testing blood, in testing breath and in testing urine in this state. He shall adopt regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training, certification and annual recertification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and to insure reasonable accuracy in testing results."

[12] Sections 14-227a-1 through 14-227a-9 of the Regulations of Connecticut State Agencies regulate the chemical analysis of blood for alcohol "when the results thereof may be offered as evidence in a court of law with respect to persons alleged or suspected to have been under the influence of intoxicating liquor while operating a motor vehicle." Regs., Conn. State Agencies § 14-227a-2.

[13] See footnote 10, supra.

[14] General Statutes § 14-227a (*l*) provides: "SEIZURE AND ADMISSIBILITY OF CHEMICAL ANALYSIS OF HOSPITAL BLOOD SAMPLE OF INJURED OPERATOR. *Notwithstanding the provisions of subsection (c) of this section,* evidence respecting the amount of alcohol or drug in the blood of an operator of a motor vehicle involved in an accident who has suffered or allegedly suffered physical injury in such accident, which evidence is derived from a chemical analysis of a blood sample taken from such person at a hospital after such accident, shall be competent evidence to establish probable cause for the arrest by warrant of such person for a violation of subsection (a) of this section and shall be admissible and competent in any subsequent prosecution thereof if: (1) The blood sample was taken in the regular course of business of the hospital for the diagnosis and treatment of such injury; (2) the blood sample was taken by a person licensed to practice medicine in this state, a resident physician or intern in any hospital in this state, a qualified laboratory technician, an emergency technician II or a registered nurse; (3) a police officer has demonstrated to the satisfaction of a judge of the superior court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor or drug or both and that the chemical analysis of such blood sample constitutes evidence of the commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug or both in violation

of General Statutes § 14-227a. Subsection (c) is limited to tests performed at the direction of a police officer whereas subsection (*l*) addresses tests administered by hospital personnel for diagnostic purposes. The defendant does not contend that the state failed to satisfy any of the prerequisites for the admission of the test results under the hospital subsection. Rather, he argues that results of the tests taken under the hospital subsection must also comply with the requirements of the police officer subsection. We do not agree. The hospital subsection expressly provides that results of tests taken thereunder are admissible "notwithstanding the provisions of [the police officer] subsection . . . ."

## B

Second, the defendant argues that the police officer subsection and hospital subsection violate his constitutional right to equal protection of the laws.[15] Because this claim was not raised at trial, the defendant seeks review pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In order to prevail under *Golding,* the defendant must show that (1) the record is adequate to review the alleged claim of error, (2) the claim is of constitutional magnitude alleging the violation of a fundamental right, (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial, and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond

of subsection (a) of this section; and (4) *such judge has issued a search warrant in accordance with section 54-33a authorizing the seizure of the chemical analysis of such blood sample."* (Emphasis added.)

[15] The defendant raises this equal protection claim under article first, § 20, of the constitution of Connecticut and the fourteenth amendment of the United States constitution. Because the equal protection provisions of the federal and state constitutions have the same meaning and limitations in the context of this claim, we will discuss the defendant's claim under both provisions simultaneously. See *Franklin* v. *Berger,* 211 Conn. 591, 594 n.5, 560 A.2d 444 (1989).

a reasonable doubt. *State* v. *Golding,* supra, 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant to the particular circumstances." Id., 240. In the present case, the defendant's claim fails because he did not satisfy the third prong of *Golding* by showing a violation of his right to equal protection of the laws.

The defendant contends that §§ 14-227a (c) and 14-227a (*l*) arbitrarily classify motorists, for the purpose of admitting their blood test results at trial, on the basis of their medical condition at the time of the test. Under the police officer subsection,[16] a defendant must be given an opportunity to telephone an attorney and consent to a blood test before the results of that test can be admitted at trial. The defendant's blood test results, however, were admitted under the hospital subsection,[17] the requirements of which the defendant concedes the state properly met. Nonetheless, he claims his right to equal protection of the laws was violated because, as an injured defendant given a blood test by the hospital, his test results were admitted at trial without the notification of an attorney and consent protections of § 14-227a (c), the police officer subsection. The defendant posits that the differences in conditions for admissions of tests administered under the police officer subsection and those administered under the hospital subsection amount to an arbitrary and irrational classification based on a defendant's status as either injured or uninjured at the time of the test. Contrary to the defendant's argument, nothing in the police officer subsection prevents a police officer from obtaining a blood sample from a consenting but injured operator. See *State* v. *Stevens,* 224 Conn. 730, 620 A.2d 789

[16] See footnote 10, supra.
[17] See footnote 14, supra.

(1993). This is in fact what Dostanko initially attempted to do at the hospital after the accident. Consequently, the classification on which the defendant premises his argument, injured versus uninjured defendants, does not exist.

Moreover, to "implicate the equal protection clauses under the state[18] and federal[19] constitutions it is necessary that the statute, or action, treat differently persons standing in the same relation to it." *State* v. *Johnson,* 26 Conn. App. 553, 558, 603 A.2d 406, cert. denied, 222 Conn. 905, 606 A.2d 1350 (1993). Persons in custody who are requested by a police officer to take a blood test for the purposes of establishing legal liability are not similarly situated to patients from whom blood is drawn for diagnostic purposes in a hospital. As such, the protections afforded persons in the two circumstances are necessarily different. Accordingly, we hold that the trial court properly admitted the hospital blood test results into evidence.

## IV

### ADMISSION OF STATEMENTS

The defendant next claims that the trial court improperly admitted testimony of Dostanko and Modica concerning the defendant's admissions to them that he was the operator of the car. The testimony of Dostanko and

---

[18] The constitution of Connecticut, article first, § 20, as amended, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[19] The constitution of the United States, amendment fourteen, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Modica was significant because it was unclear from the accident scene whether it was the defendant or Hinds who had been operating the car. The car had gone out of control and skidded across the highway, crashing three times into metal guardrails before apparently rolling over and finally coming to rest on a grassy embankment off the road. When Dostanko arrived at the scene, the defendant and Hinds were intertwined in the front seat and Dostanko could not tell which of them had been operating the car.

After the defendant and Hinds were taken to the hospital for treatment, Dostanko spoke to them separately in an attempt to find out who had been driving. The defendant was asked first and denied being the driver. Dostanko then asked Hinds and he responded that the defendant was driving. Dostanko went back to the defendant and informed him of Hinds' response. The defendant replied, "All right, I was [expletive deleted] driving." Later, the defendant also told Modica that he was the driver. The statements were admitted at trial through the testimony of Dostanko and Modica.

## A

The defendant first argues that his statements were improperly admitted because they were the product of police interrogation and he was not advised of his *Miranda*[20] rights. We do not agree. *Miranda* requirements are not necessary unless the defendant (1) is in the custody of law enforcement officials and (2) is subjected to interrogation. *State* v. *Copeland,* 205 Conn. 201, 530 A.2d 603 (1987). In the present case, the defendant was not in custody when the statements were made.

---

[20] *Miranda* v. *Arizona,* 348 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At the accident scene, the defendant was obstreperous, combative and appeared intoxicated. The defendant exhibited obvious injuries and was classified as a trauma patient by the emergency medical technicians. As he was being extricated from the car, the defendant argued with the emergency workers and tried to remove the neck brace and restraining belt that were attached to the body board used to remove him from the car. He continued to be combative and an emergency medical technician requested help from Dostanko, who shouted at the defendant to let the medical technicians look at him and do their job. The defendant continued to resist treatment aggressively in the ambulance and at the hospital.

The defendant contends that Dostanko's order to the defendant as he was brought to the ambulance constituted placing him in custody. We do not agree. He was not physically restrained by Dostanko at the time nor did Dostanko or any other officer remain with him so as to create the appearance that he was not free to leave. After the defendant was put into the ambulance, Dostanko drove to the hospital to continue his investigation.

At the hospital, Dostanko was in the defendant's presence only sporadically and testified that he did not prevent the defendant from leaving or from doing anything else. The defendant, however, claims that the hospital personnel would not let him leave because he needed treatment and that this is the functional equivalent of police custody. The defendant cites no authority, nor are we aware of any, for the proposition that hospital emergency room personnel's refusal to allow a patient to leave because he needs medical treatment constitutes police custody. In *United States* v. *Martin,* 781 F.2d 671, 673 (9th Cir. 1985), the court held that *Miranda* warnings were not required where police officers went to the hospital to question the defendant

when the officers did nothing to bring about or to extend his hospitalization. Similarly, in the present case, Dostanko did not bring about or extend the defendant's hospitalization against his will and was not involved in his medical treatment.

The trial court properly ruled that *Miranda* warnings were not required because the defendant was not in custody. In view of this conclusion, it is not necessary for us to consider the question of whether the defendant was subjected to interrogation.

### B

The defendant's second objection to the admissibility of his statements that he was the operator is that there was insufficient corroborative evidence to support their admission under the corpus delicti rule. We are not persuaded.

"The corpus delicti rule is fundamental jurisprudence to the effect that a person accused of a crime cannot be convicted solely on his own naked confession unsupported by corroborative evidence. . . . The purpose of the corpus delicti rule is to prevent convictions for nonexistent crimes based on untrue confessions. . . . Accordingly, before the state may introduce a defendant's confession into evidence, the state must introduce corroborative evidence, direct or circumstantial, that taken together with the confession, establishes the corpus delicti." (Citations omitted.) *State* v. *Kari,* 26 Conn. App. 286, 289, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992).

In Connecticut, the corpus delicti rule has two distinct formulations. First, where the crime charged encompasses a specific kind of loss or injury, the state may make use of a defendant's admission at trial only if it proves, with sufficient corroborating evidence, the existence of that specific injury or loss. *State* v.

*Tillman,* 152 Conn. 15, 20, 202 A.2d 494 (1964). The state does not have to prove the criminality of the underlying loss or injury as an element of the corpus delicti under this formulation. Id. Second, where the crime charged, however, prohibits certain conduct but does not require a specific harm, the state need introduce only substantial independent evidence that would tend to establish the trustworthiness of the defendant's confession. *State* v. *Harris,* 215 Conn. 189, 194–95, 575 A.2d 223 (1990).

In the present case, each of the two formulations is implicated. The defendant's conviction of assault in the second degree with a motor vehicle in violation of § 53a-60d is governed by the *Tillman* formulation. The elements of this crime include proof that a person, while operating under the influence, caused serious bodily injury to a third person. Assault in the second degree, therefore, requires a specific harm, "serious bodily injury." There can be no doubt as to the existence of serious bodily injury to a third party in the present case in light of the state's evidence that the passenger in the defendant's car suffered paraplegia as a result of the accident.

The defendant's conviction of operating a motor vehicle under the influence of liquor in violation of § 14-227a involves the *Harris* formulation because that section prohibits conduct, namely operating a motor vehicle under the influence of liquor or drugs. Consequently, the defendant's confession that he was the driver of the vehicle could be admitted as evidence at trial only if the state produced substantial extrinsic evidence tending to demonstrate that the statements of the accused were "true," i.e., trustworthy. Id.

The state satisfied that burden. The essential facts admitted by the defendant regarding his operating the

vehicle were sufficiently substantiated by the additional evidence that the defendant owned the motor vehicle in question and had driven the car earlier in the evening. Moreover, the officers arriving at the accident scene testified that Hinds' feet were on the passenger's side when they arrived. Finally, the examining physician at the hospital testified that the tenderness in the defendant's chest was consistent with an impact against the steering wheel. In light of the fact that the corroborating evidence need only fortify the "truth of the confession without independently establishing the crime charged," it is evident that the state met its burden. Id., 194; see also *State* v. *Comollo,* 21 Conn. App. 210, 572 A.2d 1037, cert. denied, 215 Conn. 811, 576 A.2d 542 (1990).

Accordingly, we hold that the trial court properly admitted the defendant's admission into evidence.

## V

### SEARCH WARRANT HEARSAY

The defendant next claims that the trial court improperly admitted the affidavits supporting the search warrant into evidence. The hospital blood test provisions of General Statutes § 14-227a (*l*); see part III; establish, inter alia, a condition precedent to admission of hospital blood test results that the judge issue a search warrant authorizing the seizure of the test results. To show compliance with this requirement, the state offered the search warrant and accompanying affidavit used to obtain the hospital tests results. The defendant objected because the affidavit contained hearsay statements that the defendant was the vehicle operator. The court overruled the objection, admitted the complete search and seizure warrant and gave a particularly good explanation and instruction to the jury concerning the limited purpose for which the warrant

was being admitted.[21] A similar limiting instruction was included in the jury charge at the close of evidence.[22] We presume that the jury followed the court's instruction. *State* v. *Reddick,* supra, 454. Thus, we conclude that the trial court properly admitted the search warrant and accompanying affidavit into evidence.

Furthermore, because this is not a constitutional issue, but solely a claim of evidentiary error, the defendant bears the burden of establishing that it was harmful; *State* v. *Williams,* 30 Conn. App. 654, 656, 621 A.2d 1365 (1993); *State* v. *Nelson,* 17 Conn. App. 556, 568, 555 A.2d 426 (1989); and that it is more probable than not that the claimed error affected the verdict. *State* v. *Robinson,* 213 Conn. 243, 259, 567 A.2d 1173 (1989). Here, other evidence that the defendant was the operator had already come into the case. "It is well established that a judgment need not be reversed merely

---

[21] At the time the warrant was admitted, the trial court instructed the jury as follows: "[L]adies and gentlemen, this exhibit is being admitted pursuant to a statute that requires that when a chemical analysis of blood sample is taken of an injured operator of a motor vehicle at the hospital in connection with the treatment of that person for injuries sustained in the accident, that certain procedures be followed, one of which is that the result of any such blood sample be seized after a search warrant has been signed by a judge and, specifically, a police officer has demonstrated to the satisfaction of a judge of the Superior Court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor. It is introduced to show compliance with that statute. It is not being introduced for the truth of the statements contained therein. It is limited only to show compliance with the statute and not for the truth contained in any of the statements that are contained therein. . . . This goes to the first count of operating under the influence only."

[22] The trial court charged the jury as follows: "Now with respect to the limiting instruction that I referred to earlier, you will recall that exhibit fourteen which you will have with you in your deliberation room is the search warrant application. That search warrant application, exhibit fourteen, is not proof of guilt. It was introduced solely to satisfy our laws concerning the compliance with the statutes before a hospital blood test can be introduced into evidence."

because inadmissible evidence to the same effect has also been placed before the jury." *State* v. *Williams,* supra. In the present case, therefore, the defendant cannot establish that he was harmed by the trial court's ruling.

The judgment is affirmed.

In this opinion the other judges concurred.