(950 P.2d 273)

No. 76,601

STATE OF KANSAS, *Appellee,* v. LARRY J. BRIGGS, *Appellant.*

Opinion filed December 19, 1997.

*Rebecca Woodman* and *Thomas W. Bartee,* assistant appellate defenders, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Keith E. Schroeder,* assistant county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before MARQUARDT, P.J., PADDOCK, S.J., and MARK A. VINING, District Judge, assigned.

MARQUARDT, J.: Larry J. Briggs appeals from his jury conviction and sentence for involuntary manslaughter.

On December 3, 1994, 81-year-old Verneta Stallings had slowly inched her car forward into an intersection when the car that Briggs was driving crashed into the driver's side of her car, killing her.

While investigating the accident, Officer David Maness noticed the odor of alcohol on Briggs' breath. Officer Maness asked Briggs to perform several sobriety tests. During the one-leg test, Briggs had to use his arms to maintain his balance. Officer Maness also noted that Briggs' speech was slurred and his eyes were bloodshot. Briggs admitted to Officer Maness that he had drunk a quart of beer while working on a car that afternoon. Briggs was arrested for driving under the influence of alcohol. Due to his injuries, Briggs was taken to the hospital where he consented to having a blood test done.

Susan Hein, a medical technologist at the hospital, analyzed Briggs' blood. Hein testified that serum was used for the blood alcohol test rather than whole blood or plasma. Hein testified further that in determining Briggs' alcohol concentration, the machine that she used for the test, the Dupont Automatic Clinical Analyzer (ACA), was reliable and the procedure that she used to do the test was commonly accepted in the scientific community and commonly used in laboratories throughout Kansas.

Defense counsel objected to the admission of the blood serum test results on the basis that the testing procedure that was used did not meet the standard for admissibility. Defense counsel submitted no evidence on this issue, but cited *People v. Campbell,* 73 N.Y.2d 481, 483-86, 541 N.Y.S.2d 756, 539 N.E.2d 584 (1989), in which the court held that the State had failed to establish that the Dupont ACA was reliable in determining blood alcohol content. The district court overruled Briggs' objection.

Hein testified that the test results indicated that Briggs' blood alcohol concentration was .155. On cross-examination, when defense counsel asked Hein about the relative concentration of alcohol in whole blood as opposed to serum, she stated: "[T]he alcohol present in the blood I believe is pretty much the same. The reason we remove the cellular material is not because the concentration is different; it's because the cells interfere with the testing procedure." Hein testified further that she believed the "concentration [to be] the same in the red cells as it is in the serum." Hein also testified that although she could test whole blood, the cellular matter would be broken up first and then removed, leaving only the red cells and the plasma; "[i]t's not whole blood any more."

For a conviction of involuntary manslaughter, the district court instructed the jury that the State had to establish that Briggs was driving under the influence of alcohol by proving that he had operated a vehicle with a blood alcohol concentration of .08 or more.

The jury found Briggs guilty of involuntary manslaughter. Prior to sentencing, Briggs filed a notice of error in the criminal history worksheet, arguing that his prior municipal conviction for driving under the influence should not be counted in his criminal history because it was on appeal and still pending before this court. Following a hearing, the district court held that the prior conviction could be counted in Briggs' criminal history notwithstanding the pending appeal. The district court sentenced Briggs to a prison term of 52 months.

Briggs argues that the evidence presented at trial is insufficient to support his conviction for involuntary manslaughter, that the jury instruction on the elements of involuntary manslaughter was erroneous, and that the district court erred in including his previous municipal conviction for driving under the influence in his criminal history as a person felony.

## Sufficiency of the Evidence

In order to find Briggs guilty of involuntary manslaughter, the jury was required to find that he was guilty of driving under the influence of alcohol. See K.S.A. 21-3404(b). K.S.A. 1996 Supp. 8-1567(a)(2) provides that no person shall operate any vehicle

when "the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more." Briggs argues that the evidence of the alcohol level in his blood serum was insufficient to establish that the alcohol level in his blood was .08 or more.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Knighten*, 260 Kan. 47, 52, 917 P.2d 1324 (1996).

See *State v. Price*, 233 Kan. 706, 712-13, 664 P.2d 869 (1983).

There is no published Kansas appellate court case addressing the use of the alcohol level in serum or plasma to prove blood alcohol concentration. In *City of Abilene v. Hall*, 202 Kan. 636, 640, 451 P.2d 188 (1969), the court stated the general principles of testing for blood alcohol content. The *Hall* court held that a properly educated medical technologist has the necessary qualifications to evaluate chemical tests for alcoholic content of blood. 202 Kan. at 640.

The *Hall* court adopted the following rule:

"[T]he fact there may be some disagreement on the part of a few in the scientific and medical community as to the reliability of a particular test method is a matter affecting the weight of such evidence and not its admissibility. [Other courts] have held such evidence admissible as long as a qualified expert witness testifies that the particular test method employed in a given case is reliable and accurate in his opinion, and also that it is generally accepted as such by other experts in the field." 202 Kan. at 641.

On appeal, Briggs cites *Com. v. Wanner*, 413 Pa. Super. 442, 450, 605 A.2d 805 (1992), where the court held that evidence of the amount of alcohol in a person's plasma was not sufficient to support a conviction. The *Wanner* court quoted extensively from *Com. v. Bartolacci*, 409 Pa. Super. 456, 458-59, 598 A.2d 287 (1990), where the court required a conversion of the blood serum, and an expert testified that "when serum blood is tested the results will show a blood alcohol content which can range from between 10 to 20 percent higher than a test performed on whole blood."

In *Melton v. State*, 597 N.E.2d 359 (Ind. App. 1992), an alcohol content test was performed using a Dupont ACA, which indicated a blood alcohol content of .167; however, the State failed to present any evidence of conversion, and the technician could not indicate a blood alcohol rating. The *Melton* court held that the evidence was insufficient to prove the amount of alcohol in the defendant's blood. 597 N.E.2d at 361. *Melton* can be distinguished from this appeal because Hein testified that blood alcohol concentration and serum alcohol concentration are about the same.

Other jurisdictions have discussed how the blood alcohol concentration in serum differs from that in whole blood. See *State v. DesLaurier*, 32 Conn. App. 553, 562, 630 A.2d 119 (1993) (noting that a serum alcohol concentration of .179 converted into a whole blood concentration of .158); *State v. Koch*, 115 Idaho 176, 178-79, 765 P.2d 687 (1988) (a test of the serum with the proper conversion was admissible); *People v. Menssen*, 263 Ill. App. 3d 946, 953, 636 N.E.2d 1101, *appeal denied* 158 Ill. 2d 561 (1994) (holding that serum test results could predictably be anywhere from 12 percent to 20 percent higher than the blood alcohol rating); *Guy v. State*, 678 N.E.2d 1130, 1135 (Ind. App. 1997) (serum alcohol content of .238 converts to a whole blood content of .199); *State v. Braden*, 867 S.W.2d 750, 754 (Tenn. Crim. App. 1993) (conversion of serum rating of .091 to whole blood rating of between .0676 and .0762 and 3 percent margin of error in conversion rate). In 1 Fitzgerald, Intoxication Test Evidence § 19:12 and Fig. 29 (2d ed. 1995), the author notes that serum or plasma alcohol content values are higher than whole blood by an average of 16 percent.

Evaluating this issue strictly as a sufficiency of the evidence argument, the evidence, viewed in the light most favorable to the State, indicates that serum alcohol concentration "is pretty much the same" as blood alcohol concentration. See *Knighten*, 260 Kan. at 52. Even though Hein also testified that she was not really sure if the concentration was the same, Briggs offered no evidence on the issue of conversion and was satisfied to question Hein generally about her knowledge of the conversion. The cases previously cited from other jurisdictions are clear that the serum alcohol concen-

tration rating is between 10 to 20 percent higher than the corresponding blood alcohol concentration.

The test for driving under the influence in violation of K.S.A. 1996 Supp. 8-1005 is whether the defendant has an alcohol concentration of .08 or greater in his or her "blood, urine, breath or other bodily substance." The statute does not use the qualifier "whole" before the word "blood." In addition, the statute requires the same percentage of alcohol concentration for blood, urine, breath, or other bodily substance. Evidence of the percentage of alcohol in Briggs' blood serum and testimony that the alcohol concentration in whole blood "is pretty much the same" as that in blood serum met the requirements of K.S.A. 1996 Supp. 8-1567.

Using the highest reduction rate of 20 percent from *Bartolacci,* Briggs' blood alcohol concentration would still be over .08—.155 reduced by 20 percent equals .124. The evidence of Briggs' blood alcohol concentration is sufficient to support his conviction.

## Jury Instruction

Briggs argues that the jury instruction on the elements of driving under the influence of alcohol relieved the State of the burden of proving that his blood alcohol concentration was .08 or more while he operated a vehicle.

"No party may assign as error the giving or failure to give an instruction unless objected to before the jury retires to consider its verdict stating distinctly the matter objected to and grounds for the objection, unless the instruction is clearly erroneous." K.S.A. 22-3414(3); *Price,* 233 Kan. at 711 (noting defendant's failure to object to instruction on the permissive presumption created by K.S.A. 1996 Supp. 8-1005 that defendant was operating a vehicle under the influence of alcohol). " 'An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict.' " *State v. Isley,* 262 Kan. 281, 291, 936 P.2d 275 (1997).

K.S.A. 1996 Supp. 8-1567(a) provides: "No person shall operate or attempt to operate any vehicle within this state while . . . (2) the alcohol concentration in the person's blood or breath, as meas-

ured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more." See PIK Crim. 3d 70.01-A.

The district court's jury instruction set forth K.S.A. 1996 Supp. 8-1567(a)(2) as follows: "That the defendant, while driving or within two hours after he operated or attempted to operate the vehicle had an alcohol concentration in his blood of .08 or more."

Briggs argues that this instruction erroneously informed the jury that the offense of driving under the influence of alcohol did not require a finding that his blood alcohol concentration met or exceeded .08 *while he was driving.* "[T]he failure to properly instruct the jury as to the essential elements of the crime charged prevents the jury from rendering a proper verdict." *State v. Castoreno,* 255 Kan. 401, 410, 874 P.2d 1173 (1994). While Briggs is correct if this instruction is read in isolation, when the instruction is read in the context of the other instructions and the case, it was not clearly erroneous.

The involuntary manslaughter instruction informed the jury that it must find that Briggs killed Stallings "while in the commission of driving under the influence of alcohol." In closing argument, the State argued that to establish that Briggs was driving under the influence, the jury must find "that while driving or attempting to . . . drive a car Briggs had a blood alcohol concentration of .08 or more." The accident occurred between 5:10 and 5:20 p.m., and Briggs' blood was drawn at approximately 7:15 p.m. There was no evidence that Briggs consumed additional alcoholic beverages after the collision.

It is unlikely that the jury disregarded its common sense and read the instruction to require that it find that Briggs was under the influence of alcohol after the collision occurred rather than while he was driving. We find that the instruction was not clearly erroneous.

## Criminal History Score

Briggs argues that the district court erred in scoring his prior municipal conviction for driving under the influence as a person felony.

. The presentence investigation (PSI) report states that Briggs' criminal history is a D. The only conviction listed on the PSI report is a municipal conviction for driving under the influence. Following a hearing on Briggs' motion challenging the criminal history score, the district court found that Briggs' criminal history was a D.

Interpretation of the Kansas Sentencing Guidelines Act is a question of law subject to unlimited review by this court. *State v. Christensen*, 23 Kan. App. 2d 910, 914, 937 P.2d 1239 (1997); see *State v. Lanning*, 260 Kan. 815, 817, 925 P.2d 1145 (1996). In *Lanning*, 260 Kan. at 817, the court noted:

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] Generally, criminal statutes are to be construed strictly against the State. [Citation omitted.] However, this rule of construction is subordinate to the rule that judicial interpretation must effectuate legislative design and the true intent of the legislature. [Citation omitted.]"

K.S.A. 21-4711(c) provides: ·

"If the current crime of conviction is for subsection (b) of K.S.A. 21-3404, involuntary manslaughter in the commission of K.S.A. 8-1567 and amendments thereto driving under the influence, then, each prior adult conviction or juvenile adjudication for K.S.A. 8-1567 and amendments thereto shall count as one person felony for criminal history purposes."

Briggs' criminal history classification of D resulted from his prior municipal conviction for driving under the influence and K.S.A. 21-4711(c). See K.S.A. 21-4709.

K.S.A. 21-4710(d)(7) provides: "All person misdemeanors, class A nonperson misdemeanors and class B select nonperson misdemeanors, and all municipal ordinance and county resolution violations comparable to such misdemeanors, shall be considered and scored."

K.S.A. 21-4710(b) provides: "A class B nonperson select misdemeanor is a special classification established for weapons violations. Such classification shall be considered and scored in determining an offender's criminal history classification." Page 25 of the 1997 Kansas Sentencing Guidelines Desk Reference Manual provides that select class B nonperson misdemeanor convictions "are

the only nonperson class B or class C misdemeanors which are counted in the determination of the offender's criminal history."

A first conviction of driving under the influence is a nonselect class B nonperson misdemeanor. K.S.A. 1996 Supp. 8-1567(d). K.S.A. 1996 Supp. 8-1567(k)(2) defines conviction as "being convicted of a violation of a law of another state or an ordinance of any city, or resolution of any county, which prohibits the acts that this section prohibits."

Briggs reads K.S.A. 21-4710 as not allowing the use of municipal convictions when they are class B nonperson misdemeanors other than select class B nonperson misdemeanors. Briggs reasons that because K.S.A. 21-4710 does not provide for the use of municipal class B nonperson misdemeanors, his municipal conviction for driving under the influence should not be used to enhance his sentence under K.S.A. 21-4711(c).

Briggs relies on too narrow a reading of the exclusion of class B nonperson misdemeanors from criminal history scores in K.S.A. 21-4710.

K.S.A. 21-4711(c) provides an exception to the general rules of criminal history scoring that applies to prior convictions under K.S.A. 1996 Supp. 8-1567 when the current crime of conviction is involuntary manslaughter committed while driving under the influence pursuant to K.S.A. 21-3404(b). K.S.A. 21-4711(c) does not provide any indication that municipal convictions for driving under the influence should be treated differently from state convictions other than to cite to K.S.A. 1996 Supp. 8-1567. K.S.A. 1996 Supp. 8-1567(k)(2), however, specifically provides that a conviction under that statute includes municipal convictions. Reading these statutes together, municipal convictions for driving under the influence may be used under the special criminal history provision of K.S.A. 21-4711(c). See *State v. Le*, 260 Kan. 845, 847-48, 926 P.2d 638 (1996) ("[S]everal provisions of an act, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire act if it is reasonably possible to do so.").

Additionally, where a general statute and a specific statute conflict, the specific statute controls. *Carmichael v. State*, 255 Kan.

10, 15, 872 P.2d 240 (1994); see *State v. LaMunyon*, 259 Kan. 54, 57-58, 62, 911 P.2d 151 (1996). K.S.A. 21-4711(c) and K.S.A. 1996 Supp. 8-1567 are the specific statutes governing sentencing of persons convicted of involuntary manslaughter while driving under the influence with prior convictions for driving under the influence. These two statutes control over the general rule of K.S.A. 21-4710 that nonselect class B nonperson misdemeanors are not used in criminal history scores.

The above interpretation of the relevant statutes is also consistent with the apparent legislative intent to severely punish individuals who have prior convictions for driving under the influence who are later convicted of involuntary manslaughter while driving under the influence. There is little rationale for treating persons with prior municipal convictions for driving under the influence differently from persons with prior state convictions for driving under the influence.

Affirmed.